UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 18-23541-Civ-COOKE/GOODMAN**

JERRY HO, individually
and as Personal Representative of the
ESTATE OF AMY TONG,

     Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES LTD.,
a Liberian Corporation, d/b/a
ROYAL CARIBBEAN CRUISE LINE and/or
ROYAL CARIBBEAN INTERNATIONAL,

     Defendant.

_____/

**OMNIBUS ORDER ON *DAUBERT* MOTIONS**

THIS MATTER comes before the Court on five cross motions seeking to exclude expert testimony that allegedly violates the Federal Rules of Evidence. *See* Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). After considering the arguments and the applicable legal standards, the Court:

- **DENIES** Plaintiff's Daubert Motion to Exclude All or Some of Defendant's Economist, Joseph Obermeyer's Opinions and Testimony (ECF No. 86);
- **GRANTS** *in part* Plaintiff's Daubert Motion to Exclude All or Some of Defendant's Emergency Medicine Expert, Dr. Girish Kapur's Opinions and Testimony (ECF No. 87);
- **DENIES** Defendant's Daubert Motion to Strike Plaintiff's Economic Damages Experts, Shaun Aulita And Gary Anderson (ECF No. 88);
- **GRANTS** *in part* Defendant's Daubert Motion to Strike Plaintiff's Expert Captain Hendrik J. Keijer (ECF No. 89); and

1

- **GRANTS** *in part* Defendant's Daubert Motion to Strike Plaintiff's Expert Dr. Michael Falgiani (ECF No. 90).

### BACKGROUND

This is a maritime wrongful death case. On June 30, 2017, Amy Tong and her husband, Jerry Ho, were passengers onboard the *Freedom of the Seas*, a cruise ship owned and operated by Royal Caribbean Cruises, Ltd. ("RCCL"). *See generally* Compl. At approximately 7:00 PM that night, Ms. Tong, who suffered from lupus erythematosus, began complaining of difficulty breathing. *Id.* at ¶13. Mr. Ho contacted the Ship's medical office, and after completing a telephone triage, the on-call nurse advised the couple to visit the Ship's infirmary. *Id.* at ¶16. Upon arrival, the couple found the infirmary locked and no medical personnel present. *Id.* at ¶17. About 20 minutes later, the on-call nurse unlocked the infirmary and proceeded to examine Ms. Tong. *Id.* at ¶18. Ms. Tong's oxygen level was recorded at 74% and her heart rate was recorded at 134 BPM. *Id.* Shortly thereafter, a staff doctor arrived and performed various diagnostic tests, including a chest x-ray. *Id.* at ¶19. At approximately 9:50 PM, the doctor determined that Ms. Tong required shoreside treatment, thus, Ms. Tong was removed from the ship by rescue boat and taken to land by the Italian Coast Guard to seek treatment ashore. *Id.* at ¶20. Upon arrival ashore at approximately 11:00 PM, Ms. Tong, who was still conscious and responsive, was transferred by ambulance to an Italian Hospital in Naples, Italy. *Id.* at ¶21. Upon Ms. Tong's arrival at the hospital, her heart rate slowed, and she went into cardiac arrest. Id. at ¶23. At approximately 12:15 AM, Ms. Tong ultimately died at the hospital due to congestive heart failure. *Id.* Plaintiff, Mr. Ho, advances four separate DOSHA claims asserting that Royal Caribbean's negligent delay in providing a medical evaluation and treatment caused Ms. Tong's death.

### THE *DAUBERT* STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v.*

*Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir.2005). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: 1) the expert is qualified to testify competently regarding the matters he intends to address; 2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and 3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The Eleventh Circuit refers to these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004). While these requirements somewhat overlap, the court must individually analyze each concept. *See id.*

"Knowledge, skill, experience, training, or education" may qualify an expert in this Circuit. *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* Rather, where the expert "is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla.2012). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, at *3.

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261–62. To make this determination, the district court examines: "1) whether the expert's theory can be and has been tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error of the particular scientific technique; and 4) whether the technique is generally accepted in the scientific community." *Id.* "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262. These factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining

3

reliability. *See id.* Consequently, trial judges exercise "considerable leeway" in analyzing the reliability of an expert's testimony. *Id.* at 1258.

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 Fed.Appx. 816, 823 (11th Cir.2014). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir.2004). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (noting "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence"). Consistent with this mandate, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.2002).

## DISCUSSION

### I.   Defendant's Motions

#### A. Dr. Michael Falgiani may testify about the standard of care provided to Ms. Tong, but he may not opine on causation of Ms. Tong's death.

Dr. Michael Falgiani is a Board-Certified Emergency Medicine physician with medical licenses from six states, including Florida. *Falgiani Expert Report*, ECF No. 94-1.

Defendant seeks to disqualify Dr. Falgiani's testimony on the grounds that his causation opinions are *ipse dixit*[1] unsupported by facts. For example, Dr. Falgiani opines that "Mrs. Tong's rapid progression of her [congestive heart failure] and eventual cardiac arrest and death were caused by the failure to timely diagnose and appropriately treat Mrs. Tong's [congestive heart failure] along with the delays in both the initiation treatment and disembarkation and transfer off the vessel." *Falgiani Report*, ECF No. 94-1 at p. 5. Defendant

---

[1] *Ipse dixit*: He himself said it; a bare assertion resting on the authority of an individual. Black's Law Dictionary 5th Ed. (1979).

argues that such a statement is not based on record evidence, but rather contradicted by the record evidence, which establishes that Ms. Tong was alive and breathing on her own when she departed the ship.

Plaintiff contends that Dr. Falgiani's opinions are based on reliable methodology because they compare the actions of RCCL's medical staff to American College of Emergency Physician ("ACEP") and Hospital Emergency Physician standards to conclude there was a deviation from the standard of care that caused or contributed to Ms. Tong's death.

A "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (internal citations omitted.) Dr. Falgiani is qualified to testify as to the general standard of care and how the care provided to Ms. Tong may have deviated from that. However, Dr. Falgiani may not testify as to what actually caused Ms. Tong's death, unless such an opinion is based on a fact(s) in the record evidence. And, whether RCCL's inaction contributed to Baker's outcome is a question of causation best answered by a jury. *Torres v. Carnival Corp.*, 2015 U.S. App. LEXIS 20131, *13 (11th Cir. 2015) (holding that an expert's speculative contributing factors theory of causation is properly excluded where the evidence does not support it); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 682 (11th Cir. 1984) (approving of the district court's decision to present to the jury "a battle of experts on the question of causation").

Accordingly, the Court **GRANTS** *in part* Defendant's Daubert Motion to Strike Plaintiff's Expert Dr. Michael Falgiani (ECF No. 90).

### B. Both Ms. Aulita and Dr. Anderson may opine on Ms. Tong's past and future wages.

Plaintiff has retained Ms. Shaun Mundy Aulita as a vocational rehabilitation expert to opine on certain pecuniary damages based on the loss of Ms. Tong's future lost wages and services. Ms. Aulita is a self-proclaimed maritime claims specialist, with at least 30 years of experience. RCCL does not challenge Ms. Aulita's qualifications but argues that Ms. Aulita's testimony should be excluded because she relied on the self-serving statements Plaintiff presented to her with respect to Ms. Tong's employment status, promotion

5

prospects, and future earning capacity. ECF No. 88 at p. 5. The Court disagrees. A review of Ms. Aulita's report reveals that she reviewed various relevant documents in forming her conclusions. *Aulita Expert Report*, ECF No. 91-1 at pp.2-3. Ms. Aulita explicitly states in her report that she considered, *inter alia*, Ms. Tong's past employment and promotional history at University of California San Francisco ("UCSF"), Ms. Tong's tax returns, the Bureau of Labor Statistics Occupational Statistics data, UCSF Salary Scales, Tong's benefit statements from UCSF, and the deposition testimony of relevant witnesses. *Id.* Ms. Aulita noted a steady pattern of guaranteed reappointments and promotions from 2009 to 2017 and based on these facts, projected Amy's future earnings. *Id.* It does not appear that she solely relied on the unsubstantiated facts as suggested by RCCL. Defendant's Daubert Motion with respect to Ms. Aulita is **DENIED**.

Gary A. Anderson, Ph.D's expert report opines that Plaintiff's past and future economic losses totals $3,140,112. *Anderson Expert Report*, ECF No. 90-1. RCCL does not challenge Dr. Anderson's qualifications but RCCL asserts that Mr. Anderson's opinion should be excluded because his calculations are simply a collection of charts that are not based in facts, nor is there evidence that Mr. Anderson relied on any ascertainable methodology. RCCL's arguments speak to the weight the jury should give Dr. Anderson's testimony and are not grounds for excluding that testimony. *See Stepanovich v. Bradshaw*, No. 2:14CV270-PAM-MRM, 2017 WL 10084903, *1, *6 (M.D. Fla. Feb. 3, 2017). Defendant's *Daubert* Motion with respect to Dr. Anderson is **DENIED**.

In sum, the Court **DENIES** Defendant's Daubert Motion to Strike Plaintiff's Economic Damages Experts, Shaun Aulita And Gary Anderson (ECF No. 88).

### C. Captain Hendrik Keijer may testify about the operational feasibility of a medical evacuation but is not qualified to opine on the medical necessity of that procedure.

Captain Hendrik Keijer is a "Master Mariner and cruise industry veteran with more than 25 years of experience onboard in office and captain roles, augmented by landside Commodore/Director role in the Marine Operations Department in cruise line headquarters." *Keijer Expert Report*, ECF No. 89 at p. 19. Captain Keijer reviewed medical records, RCCL's medical policies, the ship's log and position information, and the

6

depositions and reports of other experts to prepare his report. *Id.* at p.3. Captain Keijer's review of the relevant information—coupled with his prior experience—led him to opine , *inter alia*, that: 1) RCCL failed to reasonably, and automatically, transfer the medical facilities' phone to a nurse or Doctor with resultant delay of Tong's medical care; 2) RCCL's failure to expedite Tong's on scene response and/or transfer to the onboard medical facility delayed her medical care; and 3) RCCL unreasonably extended Tong's SAR boat medical evacuation time by approximately 45 minutes. *Id.* at p.18.

RCCL objects to Captain Keijer's testimony, arguing he lacks the qualifications necessary for him to offer opinions as to Baker's medical condition or whether Ms. Tong's situation warranted a medical evacuation. RCCL is correct. Captain Keijer has no medical experience and he cannot testify on medical issues like Ms. Tong's condition or what care RCCL should have extended to Ms. Tong while she was on the ship. Despite this, Captain Keijer's experience as a maritime officer qualifies him to opine on all aspects of medical evacuations, such as operational feasibility and how much time a medical evacuation could have saved. RCCL does not challenge the other prongs of the *Daubert* analysis but the Court notes that Captain Keijer's experience-based testimony is reliable and would help a jury determine if Ms. Tong's could have been medically evacuated from the ship in a more expeditious manner.

Accordingly, the Court **GRANTS** *in part* Defendant's Daubert Motion to Strike Plaintiff's Expert Captain Hendrik J. Keijer (ECF No. 89).

## II.      Plaintiff's Motions

### A. Mr. Joseph Obermeyer testimony is reliable notwithstanding the use of "total offset method" in his calculations for lost future income.

Mr. Obermeyer provides financial and economic consulting services and has done so for over 20 years. *Obermeyer Expert Report*, ECF No. 95-1. Before developing his opinions, Mr. Obermeyer reviewed case-specific materials[2] and ultimately opined that "[t]o the extent

---

[2] Mr. Obermeyer reviewed: Report of Gary Anderson; Report of Shaun Aulita; Deposition of Jerry Ho; Deposition of Graeme Davis; Tax returns, including W-2 for 2012 – 2017; Amy Tong Bank of America Statements; Amy Tong Discovery Card Statements; Amy Tong UCSF Employment Records; Documents produced by UCSF in response to subpoena. *Obermeyer Expert Report*, ECF No. 95-1 at p. 4.

that Royal Caribbean is responsible for Dr. Tong's death, Jerry Ho and her estate have suffered a loss of support, net accumulations, and household services of between $660,000 and $982,000." *Id.* at p. 1. In coming to this conclusion, Mr. Obermeyer used the "total offset method" in his calculations.

Plaintiff does not challenge Mr. Obermeyer's expert qualifications. Rather, Plaintiff contends that Mr. Obermeyer's opinions should be excluded at trial because his opinions are based on flawed methodology. Specifically, Plaintiff asserts that Mr. Obermeyer's utilization of the "total offset method" in his calculations for lost future income has been rejected by the Fifth Circuit, which held that the "below market discount rate" method ("BMDR method") was the correct method for such calculations. *See Culver v. Slater Boat Co.*, 722 F.2d 114, 122-123 n.1 (5th Cir. 1983). Plaintiff further asserts that the Eleventh Circuit has also rejected the total offset method as scientifically unreliable and has explicitly adopted the BMDR method set forth in *Culver. See, e.g., Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1552 (11th Cir. 1987) ("Culver required that courts in this circuit use the 'below-market discount' method to adjust awards of future damages to present value"); *see also Deakle v. John E. Graham & Sons*, 756 F.2d 821, 832 (11th Cir. 1985) (holding that "this Circuit has chosen from among the methods currently available the approach which utilizes a below market discount rate"). Plaintiff notes that Obermeyer's analysis disregards Ms. Tong's education, training, experience and promotion possibilities, all which are encompassed in what economists call the life cycle of earnings profile. In sum, Plaintiff argues that because the parties did not stipulate to the methodology for calculating future income damages, Mr. Obermeyer's opinions, which are inherently unreliable "junk science" must be excluded.

Defendant, on the other hand, maintains that Mr. Obermeyer's opinions are sound. Moreover, Defendant contends that Plaintiff's arguments with respect to Mr. Obermeyer's calculations are erroneous because this Court overruled *Culver. See Beltran v. NCL Corp., Ltd.*, 2017 WL 4270618, at *7 (S.D. Fla. Sept. 26, 2017) ("[T]he Supreme Court has essentially overruled 'the Culver mandatory requirement of a below-market discount method.'") Thus, Mr. Obermeyer's use of the total offset method in reaching his expert does not constitute unreliable science, as alleged by Plaintiff.

Plaintiff makes no response regarding *Beltran* nor the abrogation of *Culver*, except to acknowledge that, "*Culver* may not be binding." ECF No. 97 at p.2. Plaintiff further argues that even if this Court does not find *Culver* binding authority, its reasoning should be persuasive. The Court disagrees. This Court has deftly abrogated the reasoning in *Culver*, stating, "The Eleventh Circuit [held] that neither *Culver* nor *Monesson* "requires that determining the discount rate must be performed by use of the below-market discount method rather than by the case-by-case method or the total offset method" in non-federal, diversity cases. *Beltran v. NCL Corp., Ltd.*, No. 13-24566-CIV, 2017 WL 4270618, at *7 (S.D. Fla. Sept. 26, 2017). I cannot find that Mr. Obermeyer's use of the total offset method is *per se* unreliable based on case law.

Furthermore, the Court considers Mr. Obermeyer qualified through professional training and experience. And his testimony would help the jury determine Ms. Tong's life expectancy and potential damages. Accordingly, he survives *Daubert* and the Court **DENIES** Plaintiff's *Daubert* Motion to Exclude the Testimony of Joseph Obermeyer. ECF No. 86.

### B. Dr. Girish Kapur is qualified to offer opinions on the standard of care for ship-side medical staff but is not qualified to opine on the proper diagnosis or treatment of lupus.

Dr. Girish Kapur ("Dr. Kapur") is a Board-Certified Emergency Medicine Physician and Chief of Emergency Medicine for Jackson Memorial Hospital in Miami, Florida with over 20 years of experience as a medical physician. *Kapur Expert Report*, ECF No. 87-1. Dr. Kapur is to opine on whether the acute medical care provided to Ms. Tong by RCCL's doctors and nurses met the emergency medicine standard of care. In developing his findings, Dr. Kapur relied on case-specific materials, including medical records.[3] *Id.*

Plaintiff urges the Court to exclude Dr. Kapur's testimony because he failed to state the standard of care, principles, or methods applied in forming his opinions about the

---

[3] Dr Kapur reviewed: Plaintiff's Complaint; Shipboard Medical Records; Ship Logbook Record – Unredacted; Amy Tong's Emergency Department Chart; Amy Tong's Past Medical Records; Amy Tong's Autopsy Report; Jerry Ho's Deposition; Annie Tong's Deposition; Dr. Philip W. Buys' Deposition; Dr. Ernesto Fraga's Deposition; Amanda Campos' Deposition; Iuliana Bratu's Deposition; Job descriptions for Shipboard Doctors and Nurses; and RCCL's Policies and Procedures.

medical treatment provided Ms. Tong, which renders his report unreliable. Plaintiff further asserts that Dr. Kapur's testimony should be excluded because he failed to reliably apply any accepted principles and methodology. *Id.* Moreover, Plaintiff argues that even if Dr. Kapur based his opinions on a standard of care from his personal experience as an emergency medicine doctor, he was required to explain his experiences through a three-part test articulated by the Eleventh Circuit. *Id.* at 5-6; *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)(holding that experts that base their reports on personal experience and qualifications must "explain how that experience led to the conclusion reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case."). Plaintiff also takes issue with Dr. Kapur's qualifications and argues that his testimony as it relates to Ms. Tong's lupus should be excluded because he is not a rheumatologist and thus is unqualified to analyze any aspect of lupus. *Id.*

In his report, Dr. Kapur describes in detail the steps and actions RCCL took in providing medical treatment to Ms. Tong. However, as Plaintiff's correctly note, Dr. Kapur's report is devoid of an explanation as to what standard of care RCLL should have applied under any particular medical standard. Notwithstanding this fact, the Court finds Dr. Kapur is qualified through education and experience to testify about the standard of care that RCCL's ship-side medical staff should have taken as these subjects lie within Dr. Kapur's expertise. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (district court have "broad latitude" to allow expert testimony based on "professional studies or personal experience.")

However, Dr. Kapur is not and has never been educated or trained as a rheumatologist. Thus, Dr. Kapur must refrain from offering opinions concerning Ms. Tong's diagnosis, treatment and prognosis related to lupus as he lacks the expertise required to opine on the disease and the proper treatment required.

Accordingly, the Court **GRANTS** *in part* Plaintiff's *Daubert* Motion to Exclude Opinions and Testimony of Dr. Girish Kapur. ECF No. 87.

10

## CONCLUSION

All in all, the Court:

- **DENIES** Plaintiff's Daubert Motion to Exclude All or Some of Defendant's Economist, Joseph Obermeyer's Opinions and Testimony (ECF No. 86);
- **GRANTS** *in part* Plaintiff's Daubert Motion to Exclude All or Some of Defendant's Emergency Medicine Expert, Dr. Girish Kapur's Opinions and Testimony (ECF No. 87);
- **DENIES** Defendant's Daubert Motion to Strike Plaintiff's Economic Damages Experts, Shaun Aulita And Gary Anderson (ECF No. 88);
- **GRANTS** *in part* Defendant's Daubert Motion to Strike Plaintiff's Expert Captain Hendrik J. Keijer (ECF No. 89); and
- **GRANTS** *in part* Defendant's Daubert Motion to Strike Plaintiff's Expert Dr. Michael Falgiani (ECF No. 90).

**DONE and ORDERED** in Chambers, in Miami, Florida, this 4th day of August 2020.

_____
MARCIA G. COOKE
United States District Judge


Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of Record*